## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RAYMOND TREJO,

     Plaintiff,

v.                                                                    No. 2:19-cv-00561-WJ-KRS

THE DEMING PUBLIC SCHOOLS; THE
BOARD OF EDUCATION; DEMING PUBLIC
SCHOOLS BOARD MEMBERS: BAYNE
ANDERSON, MATT ROBINSON, RON
WOLFE, WILLIAM RUIZ AND SOPHIA
CRUZ; and DEMING PUBLIC SCHOOLS
SUPERINTENDENT ARSENIO ROMERO,

     Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

     THIS MATTER comes before the Court upon Defendants' Motion for Summary Judgment and Memorandum in Support, filed October 2, 2020 (**Doc. 78**) (the "Motion"). The Court finds that the Motion is well-taken and is therefore GRANTED.

### Background

I.    **Factual**[1]

     In 2015, Plaintiff Raymond Trejo became Assistant Superintendent of the Deming Public Schools ("DPS") under Superintendent Dr. Dan Lere. In October of 2015, Trejo learned about issues with Deming High School's finances, including missing deposits for student fees. Trejo brought the suspicious financial issues to Dr. Lere and they began to investigate the irregularities.

---

[1]    This factual background section is based on the uncontroverted portions of the Motion's "Undisputed Material Facts" ("Def. UMF"), Doc. 78 at 2–12, and the Response Brief's Material Undisputed Facts ("Pl. MUF"), Doc. 86 at 3–9. Uncontroverted material facts are deemed admitted pursuant to the Local Rules. *See* D.N.M.LR-CIV 56; *see also* Fed. R. Civ. P. 56(e). The Court will not insert specific citations in this section.

In February of 2016, Trejo became aware that a local charity did not receive a fund-raising check in the amount it had expected from Deming High School. The DPS administration eventually concluded that the Head Secretary Bea Armendariz was likely embezzling funds. According to Dr. Lere, Trejo was very proactive in this investigation and 75 to 80% of the delay in completing the investigation was due to the finance department. Dr. Lere even informed the Board of Education (the "Board") that Trejo was doing an admirable job investigating the alleged embezzlement.

In August of 2016, Trejo reported his findings to local authorities and the Office of the State Auditor ("OSA"). Trejo did not make the report earlier because he did not know it was required. After OSA was notified, the Jaramillo Accounting Group ("JAG") was hired to conduct a special audit, as required by state law. Trejo and Dr. Lere were never interviewed by JAG during this audit. JAG issued a report (the "Report"), in which it found that over a four-year period, approximately $130,000 to $145,000 in funds from Deming High School were unaccounted for. The Report attributed some of the loss to DPS's weak internal controls and failure of school administration to take timely action.[2] Trejo disagrees with the Report's assignment of responsibility, and he believes that he acted in a timely manner. Trejo contends that the Report incorrectly identifies him as someone who oversees finances.

At the end of the 2016–2017 school year, Dr. Lere retired[3] and DPS hired Dr. Arsenio Romero to replace him as Superintendent. Dr. Romero started his employment with DPS on June 1, 2017, while JAG was still conducting its special audit. Dr. Romero began to reorganize the DPS leadership structure, and on June 29, 2017, Dr. Romero notified Trejo that he was eliminating the

---

[2]    The Report found the Assistant Superintendent (Trejo), the Deming High School Principal, the Business Manager, and the CFO knew about the missing deposits and failed to take timely personnel action or report the illegal activity. Moreover, the Report found that contrary to JAG's instructions to Trejo and the former CFO to properly preserve all relevant documents, "certain receipt books and other documents were removed from the DHS office and reportedly shredded before [JAG's] fieldwork began." Def. UMF ¶ 20.

[3]    The Business Manager and the CFO also retired at approximately the same time as Dr. Lere. Def. UMF ¶ 25.

Assistant Superintendent position and that Trejo would take over as Director of Maintenance, a position with the same salary level.

After receiving a draft of the Report in October of 2017, Dr. Romero decided to place Trejo on administrative leave with pay. On December 5, 2017, Dr. Romero placed Trejo on administrative leave and informed Trejo that DPS would be investigating possible misconduct based on the Report's allegations. Ultimately, this promised investigation never went beyond Dr. Romero reviewing and reflecting on the Report. Dr. Romero did not interview any individuals, including Trejo, or conduct further investigation as to the contents of the Report.

 On April 24, 2018, Dr. Romero notified Trejo that he would remain on administrative leave with pay through the expiration of his contract term on June 30, 2018, and that his contract would not be renewed for the 2018–2019 school year. During his leave, Trejo was paid his full salary and received all of his benefits for the duration of his contract.

## II.   Procedural

On May 7, 2018, Trejo filed a complaint with the Department of Education Office for Civil Rights ("OCR") alleging DPS discriminated against him on the basis of age and race. The OCR stated in a letter dated August 13, 2018 that it had referred Trejo's complaint to the Equal Employment Opportunities Commission ("EEOC") and closed its case.

On June 18, 2019, Trejo filed this lawsuit against DPS, the Board, individual Board members, and the Superintendent, Dr. Romero. *See* Doc. 1. In his Amended Complaint, Trejo alleges that Defendants violated his due process rights, discriminated against him based on his national origin and age, created a hostile work environment based on his national origin, retaliated against him for whistleblowing activities, and violated his right to privacy. Doc. 4.

This Motion requests that the Court grant Defendants summary judgment on all ten causes of action contained in the Amended Complaint. Briefing on the Motion was completed on December 7, 2020. Doc. 93. On January 12, 2021, the Court ordered Plaintiff's counsel to submit a supplemental brief, which was filed on February 25, 2021. Docs. 95 & 98. Defendants voluntarily responded to the supplemental brief on March 3, 2021. Doc. 99.

## Legal Standard

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute" exists about "any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; *see also Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir. 1991). The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citing *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial. *Trainor*, 318 F.3d at 979. In opposing summary judgment, the nonmoving party cannot rest on mere allegations but "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [he or she] carries the burden of proof." *Kannady*, 590 F.3d at 1169 (internal quotation marks omitted). In reviewing a motion for summary judgment, the court must "examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir. 2010) (citation and internal quotation marks omitted). Its function at

this stage "is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).

**Discussion**

I.     **Preliminary Issues**

A.   The Parties' Evidentiary Objections

The Federal Rules of Civil Procedure require that material cited to support or dispute a fact be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c). Trejo objects to Defendants' use of the Report, which Trejo characterizes as "inadmissible hearsay." Doc. 86 at 2. This objection is overruled. Defendants do not proffer the JAG Report for its objective truth, but rather to show the effect its contents had on Dr. Romero when he made the relevant employment decisions. Such a use does not constitute hearsay. *See Faulkner v. Super Valu Stores*, 3 F.3d 1419, 1434–35 (10th Cir. 1993) (holding that statements offered to establish employer's state of mind when making its hiring decisions were not offered for the truth of the matter asserted and were not, therefore, hearsay).

Defendants object to Trejo's use of hearsay throughout his Response Brief. The Court sustains this objection as to Pl. MUF ¶ I, as Trejo lacks any foundation or personal knowledge to testify about an unnamed District Attorney's opinion of the Report.  Defendants further argue that Trejo's use of his own deposition is self-serving. As other federal courts have noted, the term "self-serving" must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment. *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). The Court will consider Trejo's deposition testimony in ruling on the Motion.

B. <u>Issues with Plaintiff's Response Brief</u>

Defendants' Reply Brief contends that Trejo, through his Response Brief, abandoned several of his claims by failing to challenge the Motion's arguments as to these claims. Defendants further argue that Trejo should not be allowed to use his Response Brief to assert new factual bases of liability for his Due Process Claim and Right to Privacy Claim.

First, the Court concludes Trejo did not abandon any of his claims, as it does not recognize "default" summary judgments. Before the burden shifts to the nonmoving party to demonstrate a genuine issue, the moving party must meet its initial responsibility of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law. *Murray v. City of Tahlequah, Okl.*, 312 F.3d 1196, 1200 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). Trejo's burden arises only upon the Court finding that Defendants' request for summary judgment on a claim is properly supported as required by Fed. R. Civ. P. 56(c). *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160–61(1970)).

Second, as Defendants correctly point out, two factual bases asserted in the Response Brief are markedly different from those found in the Amended Complaint. On the Due Process Claim, the Amended Complaint alleges that Defendants falsely accused Trejo of negligence and mounted an "unlawful campaign to harass, punish, and terminate" Trejo, ultimately leading to a deprivation of Trejo's constitutionally protected property interest in his continued employment with DPS. Doc. 4 ¶¶ 56–64. The Response Brief fails to discuss Trejo's property interest in continued employment, and instead asserts that the accusation of negligence deprived Trejo of a constitutionally protected liberty interest by damaging his reputation and standing in the community. Doc. 86 at 10–12. Because the Amended Complaint alleges that certain accusations and a "campaign" violated

Trejo's due process rights, the Court will consider the Response Brief's argument that these facts could also create liability under a deprivation of liberty interest theory.

In contrast, with regards to the Right to Privacy Claim there is a greater disparity between what is alleged in the Amended Complaint and what is argued in the Response Brief. The Amended Complaint alleges that "[B]eginning on December 4, 2017, and continuing up to the present, Defendants have invaded Plaintiff's right to privacy and solitude by, without Plaintiff's consent, amongst other things, providing an un-redacted copy of [the Report] to the local newspaper for general publication." Doc. 4 ¶ 138. The Response Brief does not discuss media coverage of the Report. Rather it puts forth a wholly new factual basis for liability on this claim. Now, Trejo claims that his right to privacy was violated because Defendants discussed "potential disciplinary matters against Plaintiff with two community members and a JAG employee without Plaintiff's consent or knowledge, while he was still employed with DPS." Doc. 86 at 12. If Plaintiff's counsel wanted to move forward on these facts, the appropriate action would have been to seek permission to further amend the complaint to reflect this theory of liability. More importantly, the Response Brief leaves undisputed the Motion's statement of material fact asserting "[Trejo's] Right to Privacy claim is based solely on the fact that the JAG Report was released". Def. UMF ¶ 43; *see also* D.N.M.LR-CIV 56(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted."). As such, the Court will not consider the Response Brief's argument on the alleged disclosure of disciplinary information.

C.  Plaintiff's Exhaustion of Administrative Remedies

Defendants submit that Trejo's Title VII[4] and New Mexico Human Rights Act ("NMHRA") claims should be dismissed due to his failure to exhaust administrative remedies

---

[4]    Defendants do no argue that Trejo failed to exhaust administrative remedies as to his ADEA claim. An ADEA plaintiff generally needs to have filed a charge with the EEOC but does not need a right-to-sue letter to file a lawsuit in court. *See* EEOC, "Filing a Lawsuit," https://www.eeoc.gov/filing-lawsuit (last visited Mar. 4, 2021).

prior to bringing suit. The Court finds this argument is not well-taken as to the Title VII claims. However, the Court finds the argument is well-taken as to the NMHRA claims.

In order to bring a claim under either Title VII or the NMHRA, a plaintiff must have first gone through certain agency procedures and exhausted his or her administrative remedies. *See Foster v. Ruhrpumpen, Inc*., 365 F.3d 1191, 1194 (10th Cir. 2004) ("A plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter."); *Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 17, 980 P.2d 65, 70 ("[F]ull compliance with NMHRA grievance procedures [is] a prerequisite to filing [an NMHRA] claim in district court.") (internal quotation omitted).

Here, Defendants argue that the Title VII claims should be dismissed because Trejo (1) did not file an EEOC charge and (2) he has not produced EEOC right to sue letter. Doc. 78 at 20–22. In the Tenth Circuit, failure to exhaust EEOC remedies is an affirmative defense rather that a jurisdictional bar. *See Lincoln v. BNSF Ry. Co*., 900 F.3d 1166, 1185 (10th Cir. 2018). Here, the OCR's letter to Trejo states that the agency received his complaint on May 7, 2018, and that, "[t]he date your correspondence was received by the OCR will also be deemed the date it was received by the EEOC." Doc. 78-9 at 1. The OCR's action comports with the relevant regulations. *See* 29 C.F.R. § 1691.5(c). Although Trejo does not know whether the OCR *actually* filed a claim with the EEOC, the Court will assume that a proper EEOC charge was filed on May 7, 2018.[5] Trejo initiated the instant lawsuit on June 18, 2019, which is 407 days after his EEOC filing date.

The Court finds that it is appropriate to hear Trejo's federal statutory claims at this point. *See EEOC v. W.H. Braum, Inc*., 347 F.3d 1192, 1200 (the EEOC generally has exclusive

---

[5]     Plaintiff's Supplemental Brief submits that Trejo's complaint was filed on April 30, 2018, the date he filed his complaint with the OCR. Doc. 98 at 2. Since the OCR letter plainly states that "[t]he date your correspondence was received by the OCR [May 7, 2018] will also be deemed the date it was received by the EEOC" the Court will consider May 7, 2018 as the EEOC filing date.

jurisdiction over a claim during the 180 days following the filing of a charge by an aggrieved individual) (citing *EEOC v. Waffle House, Inc*., 534 U.S. 279, 291 (2002)). The law clearly states that the EEOC's failure to issue a right-to-sue letter will not defeat the claimant's statutory right to sue in the district court. *See W.H. Braum, Inc*., 347 F.3d at 1200–01 (". . .a Title VII claimant is not charged with the commission's failure to perform its statutory duties.") (quoting *Perdue v. Roy Stone Transfer Corp*., 690 F.2d 1091, 1093 (4th Cir.1982)). Accordingly, the Court will not dismiss the Title VII claims due to failure to exhaust.

In contrast, Trejo's NMHRA claims present the Court with a different administrative process and a new set of hurdles. New Mexico courts still hold that failure to exhaust administrative remedies constitutes a jurisdictional bar to claims brought under the NMHRA. *Mitchell-Carr*, 1999-NMSC-025, ¶ 20, 980 P.2d 65, 71. The EEOC has established a work-sharing agreement with the New Mexico Human Rights Bureau (the "NMHRB") under which the EEOC is an agent of the NMHRB for purposes of filing charges of discrimination pursuant to the NMHRA. *See Sabella v. Manor Care, Inc*., 1996-NMSC-014, ¶ 12, 915 P.2d 901, 904. Each agency is then required to forward to the other all charges of employment discrimination within forty-eight hours. *Id.* Hence, the Court will assume that Trejo's charge of discrimination was filed with the NMHRB in May of 2018. However, the Court may not end its inquiry at this point. New Mexico law imposes a second requirement: a plaintiff must receive an order of nondetermination from the NMHRB. *See Mitchell-Carr*, 1999-NMSC-025, ¶ 17, 980 P.2d at 70 ("The district court must dismiss an NMHRA claim if the prerequisite of obtaining an order from the [Bureau] and appealing that order within thirty days are not satisfied."). Under New Mexico law, EEOC right-to-sue letters are not treated as orders of nondetermination. *Mitchell-Carr,* 1999-NMSC-025, ¶ 18, 980 P.2d at 71. It follows that the Court's waiver of the federal right-to-sue letter requirement

under *W.H. Braum* would not extend to Trejo's failure to produce an order of nondetermination from the NMHRB. The NMHRA contemplates that 180 days after the NMHRB's receipt of the complaint the complainant can receive an order of nondetermination upon request. *See* N.M.S.A. § 28-1-10(D). Trejo could have cured his exhaustion deficiency by making a request, but he failed to do so. Under these circumstances, the Court must dismiss the NMHRA claims (Counts 4, 5, 6, and 7) because it lacks the jurisdiction to hear them.

## II.    Defendants' Motion for Summary Judgment

### A.    Count 1: Due Process Claim

The Fourteenth Amendment states: "No State shall ... deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV. The Due Process Clause encompasses two distinct forms of protection: (i) procedural due process, which requires a state to employ fair procedures when depriving a person of a protected interest; and (ii) substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998). Defendants contend that Trejo cannot claim either form of protection because he has not asserted a protected interest. *See Chavez–Rodriguez v. City of Santa Fe*, 2008 WL 5992271, at *6 (D.N.M. Oct. 9, 2008) ("[A] person must have a protected interest in either life, liberty, or property.").

Public employees, such as Trejo, can assert a property interest in their employment if they have a "legitimate claim of entitlement" to continued employment. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). What constitutes a "legitimate claim of entitlement" is defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials. *See Hulen v. Yates*, 322 F.3d 1229, 1240 (10th Cir. 2003) (per curiam).

Trejo's contract with DPS entitles him to employment through June 30, 2018. Def. UMF ¶ 33. Trejo admits that he was paid through the contract term and received all benefits he was entitled to. Def. UMF ¶ 37. Further, under New Mexico statute, Trejo cannot construe his contract with DPS as a promise of continued employment. *See* N.M.S.A. § 22-10A-21(E). Under these circumstances, it is clear that no legitimate claim of entitlement to continued employment exists.

Turning to the liberty interest claim, the Response Brief asserts that Trejo suffered damage to his reputation and standing in the community when Dr. Romero's termination letter to him accused him of misconduct and negligent omissions. Doc. 86 at 11–12. This letter has not been produced by either party, but the record is sufficiently clear that the alleged accusations neither damaged Trejo's reputation nor barred him from seeking other employment. *See Sullivan v. Stark*, 808 F.2d 737, 739 (10th Cir. 1987) (concluding that letter asserting that plaintiff was terminated due to negligence or dereliction of duty did not implicate a liberty interest in reputation). The Due Process Clause is concerned only with the type of stigma that "seriously damages an individual's ability to take advantage of other employment opportunities." *Weathers v. W. Yuma Cty. Sch. Dist. R-J-1*, 530 F.2d 1335, 1339 (10th Cir. 1976); *see also Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1348 (7th Cir. 1995) ("Liberty is not infringed by a label of incompetence or a failure to meet a specific level of management skills, which would only affect one's professional life and force one down a few notches in the professional hierarchy.") (quotations and citations omitted). Moreover, Trejo fails to present evidence, or even argue, that these accusations were published by some form of "public pronouncement." *See Six v. Henry*, 42 F.3d 582, 585 (10th Cir. 1994) (finding that because the statements at issue were not made in any public pronouncement, statements made to other governmental office personnel fell short of publication). The undisputed facts show that Trejo has not asserted a protected liberty interest.

Accordingly, because the Court finds that Trejo has not asserted a viable constitutionally protected interest, the Court concludes that Defendants are entitled to summary judgement on Count 1.

B. Counts 2 & 8: National Origin Discrimination and Age Discrimination Claims

Trejo alleges that DPS transferred him to the Director of Maintenance position and subsequently placed him on administrative leave and declined to renew his contract due to his age and national origin (Latino). Since discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges, the Court will not consider Trejo's June 29, 2017 transition to Director of Maintenance, as it occurred prior to the 300-day filing window found in both Title VII and the ADEA. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Kaster v. Safeco Ins. Co. of Am.*, 212 F. Supp. 2d 1264, 1268–69 (D. Kan. 2002), *aff'd*, 82 F. App'x 28 (10th Cir. 2003).

Under both Title VII and the ADEA, a plaintiff bears the ultimate burden of proving his employer intentionally discriminated against him. *Riser v. QEP Energy*, 776 F.3d 1191, 1199 (10th Cir. 2015). A plaintiff can prove intentional discrimination through either direct evidence or circumstantial evidence that creates an inference of intentional discrimination. *Id*. Trejo does not provide any direct evidence of discrimination,[6] so he must engage the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, a plaintiff first must establish a prima facie case of national origin or age discrimination. A prima facie case generally requires a plaintiff to show, by a preponderance

---

[6] It is undisputed that Dr. Lere heard a former DPS board member, John Sweetzer, make a racist comment at a local restaurant. Pl. MUF ¶ AA. However, the Court cannot consider this comment as direct evidence of discrimination because it is too attenuated from Trejo's claim. Dr. Lere does not provide the date of this incident and Trejo does not allege that Sweetzer was involved with the Defendants during the relevant time period. *See* Lere Depo. 28:9–22.

of the evidence, that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination. *Bennett v. Windstream Comm'n, Inc*., 792 F.3d 1261, 1266 (10th Cir. 2015). Once the plaintiff has established his prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* (internal citations omitted). Then, the burden of production shifts again to the plaintiff to show that the defendant's explanation was merely pretextual. *Id.* The plaintiff may establish pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* (quoting *Jones v. Okla. City Pub. Sch*., 617 F.3d 1273, 1280 (10th Cir. 2010)).

Here, Trejo has not established a prima facie case for either claim. Defendants do not dispute that Trejo is a member of the relevant protected categories or that he suffered an adverse employment action. The only inquiry for the Court is whether the Motion establishes that no rational jury could conclude that the circumstances surrounding the adverse action give rise to an inference of discrimination. Typically, a plaintiff may establish an inference of discrimination through (1) "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus," (2) "preferential treatment given to employees outside the protected class," (3) "a pattern of recommending the plaintiff for positions for which she is not qualified [or over-qualified]," and (4) a "failure to surface plaintiff's name for positions for which she is well-qualified." *Lincoln*, 900 F.3d at 1193 (quoting *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005)).

13

Trejo uses the testimony of Dr. Lere to support the inference element on his national origin discrimination claim. Dr. Lere states on the record that he believes Trejo was forced out of DPS due to his Latino heritage. Dr. Lere believes the Board was biased against Trejo because they never questioned the work performance of Trejo's predecessor, a white woman. Pl. MUF ¶ PP.  One Board member, Bayne Anderson, particularly concerned Dr. Lere. On one occasion, Anderson told Dr. Lere to get rid of Trejo by telling Dr. Lere "I think it's time for Ray to leave the district." Pl. MUF ¶ Y. Overall, Dr. Lere "sensed a pattern" that Anderson was more critical of Latino employees and Dr. Lere "thought it was curious" that Anderson only pointed out deficiencies in Trejo, who was the only Latino administrator at the central office. Pl. MUF ¶ Z. Additionally, the individual who replaced Trejo as the Director of Maintenance, George Wertz, is Caucasian. Pl. MUF ¶ G. As support for his age discrimination claim, Trejo submits that Mr. Wertz is younger than him. *Id.*

This evidence does not establish an inference of discrimination by a preponderance of the evidence. The record establishes that Board members, including Anderson, have no authority to make personnel decisions and that Dr. Romero was the sole decisionmaker. Def. UMF ¶¶ 30, 36. Therefore, the Board and its individual members cannot be considered "decision makers," nor can they give preferential treatment to employees outside of a protected class. Trejo does not allege that Dr. Romero, the sole decisionmaker, exhibited any actions or remarks that could be viewed as reflecting animus or that Dr. Romero was in any way influenced by the Board or its members. Apart from Wentz replacing him, Trejo does not identify any further evidence of age discrimination. Pl. Depo. 111:10-25.

Trejo argues that preferential treatment was given to employees outside of his alleged protective categories, but he fails to produce sufficient evidence of this treatment. Trejo does not

recall younger DPS employees in similar circumstances to him being treated differently. Pl. Depo. 112:1-3. More striking is DPS's handling of Janean Garney, the former Demining High School Principal. Of those identified in the JAG Report as responsible for the embezzlement scheme, only Trejo and Garney were still employed by DPS when Dr. Romero made the relevant personnel decisions. Def. UMF ¶ 38. Dr. Romero also placed Garney on administrative leave and declined to renew her contract despite Garney's status as a Caucasian woman who is more than ten years younger than Trejo. Def. UMF ¶¶ 38–40.

Although his burden of production at the prima facie stage is "not onerous," *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253, (1981), Trejo does not provide a factual basis that would support an inference of discrimination. Moreover, even if Trejo could establish a prima facie case of national origin or age discrimination, DPS has articulated a legitimate non-discriminatory reason for Dr. Romero's decision to place Trejo on administrative leave and not renew his contract. Dr. Romero states that he based his employment decision on the Report's finding that Trejo was partially responsible for the lack of controls and delays that allowed the Head Secretary's embezzlement scheme to continue. Def. UMF ¶ 35.

Trejo has not put forth sufficient evidence that this explanation is merely pretextual. The Response Brief implicitly argues pretext by establishing that Dr. Romero's predecessor, Dr. Lere, believed Trejo was an exemplary member of the DPS administration who thoroughly investigated the alleged embezzlement. Pl. MUF ¶¶ CC-OO, SS. Although all facts must be construed in a light most favorable to Trejo, in evaluating pretext the Court must consider the facts as they appeared to the decisionmaker. *Bennett*, 792 F.3d at 1268 (citing *Riggs v. AirTran Airways, Inc*., 497 F.3d 1108, 1119 (10th Cir. 2007)). The Court will not second-guess an employer's business judgment or inquire whether the employer's decisions were wise or fair. *Id.* (internal citations and quotations

omitted). The Supreme Court has advised that, in determining whether evidence of pretext can permit an inference of discrimination and avoid summary judgment, relevant factors include "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Reeves v. Sanderson Plumbing Prod., Inc*., 530 U.S. 133, 148–49 (2000). Here, Trejo has not established a prima facie case, Dr. Lere's opinion of Trejo is of modest probative value, and the timeline and other evidence proffered by Defendants strongly establishes that the relevant decisions were based on legitimate, non-discriminatory considerations. Accordingly, the Court concludes that Defendants are entitled to summary judgment on Counts 2 and 8.

C.  Count 3: Hostile Work Environment Claim

The Amended Complaint alleges that DPS created a hostile work environment in which Trejo was subject to harassment because of his national origin. Doc. 4 ¶¶ 70–80. Although Title VII does not explicitly mention hostile work environment, a victim of a racially hostile work environment may nevertheless bring a cause of action under Title VII. *Ford v. West*, 222 F.3d 767, 775 (10th Cir. 2000) (citing *Meritor Savings Bank*, *FSB v. Vinson*, 477 U.S. 57, 66 (1986)). To survive summary judgment on this claim "a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Sandoval v. Boulder Reg'l Communs. Ctr*., 388 F.3d 1312, 1326–27 (10th Cir. 2004). A plaintiff bringing a Title VII hostile work environment claim is not barred by the statute's timeliness limitations provided that an act contributing to the claim occurred within the filing period. *See Morgan*, 536 U.S. at 117–18 (2002).

16

The Amended Complaint shows only conclusory allegations that DPS's agents and employees, namely Bayne Anderson, Matt Robinson, and Dr. Romero, used verbal and written conduct to harass Trejo. The factual basis for this claim is further developed by Trejo's deposition, which reveals that Trejo believes that he was subject to a hostile work environment on June 9, 2017, at a special Board meeting where the Board discussed whether the Assistant Superintendent position should be eliminated. Def. UMF ¶¶ 56, 58. Trejo admits that no one present at the meeting said anything about his race or national origin. Def. ¶ UMF 57. In reviewing the record, the Court cannot find any showing of discriminatory intimidation, ridicule, or insult, and Trejo does not use his Response Brief to argue against the Motion as to this claim. The Court finds no genuine issue of material fact here: Trejo's allegations do not in any way demonstrate that his workplace was permeated with discriminatory intimidation, ridicule, or insult. Accordingly, the Court grants Defendants summary judgment on Count 3. Alternatively, the Court could base its ruling on the claim being time-barred. Trejo does not attempt to link the June 9, 2017 conduct, which would be time-barred if examined independently, to allegations of hostile conduct that occurred within the filing period. *See Morgan*, 536 U.S. at 117–18.

D.  Count 9: Retaliation in Violation of the New Mexico Whistleblower Protection Act

Trejo's NMWPA claim is based exclusively on his reporting of the Head Secretary's alleged embezzlement of funds at Deming High School. Def. UMF ¶ 66. A NMWPA plaintiff must prove "(i) he engaged in a protected disclosure [or action];[7] (ii) the employer took an adverse

---

[7]    Under the NMWPA, a protected disclosure occurs when an employee:

A.  communicates to the public employer or a third party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act;

B.  provides information to, or testifies before, a public body as part of an investigation, hearing or inquiry into an unlawful or improper act; or

employment action against him; and (iii) a causal connection exists between the protected disclosure and the adverse action." *Walton v. New Mexico State Land Office*, 113 F. Supp. 3d. 1178, 1199 (D.N.M. 2015).

Defendants first argue that Trejo's claim fails as a matter of law because Trejo did not make a protected disclosure. The Motion cites persuasive authority interpreting Maine's Whistleblower Protection Act for the proposition that Trejo's reporting is not protected by the NMWPA because it was part of his "assigned job duties," and, moreover, he was statutorily obligated to make the report. Doc. 78 at 19. The Court finds that, based on the cases cited and the plain language of the NMWPA, a jury could infer that Trejo was making a protected disclosure. He satisfies the first element for summary judgment purposes.

Defendants' second argument is more robust. The Motion submits that there is no causal connection in this case because Dr. Romero did not take adverse action against Trejo because he reported the embezzlement, but rather the adverse action was taken because Trejo was untimely in notifying authorities. Specifically, the Report states:

> Former Administration did not inform the Audit Committee, the Board of Education, the NM State Auditor's Office (OSA), or law enforcement timely. It is our understanding that the situation was only reported after the former audit firm

---

C.   objects to or refuses to participate in an activity, policy or practice that constitutes an unlawful or improper act.

N.M. Stat. Ann. § 10–16C–3. The NMWPA defines an unlawful or improper act as follows:

E. "unlawful or improper act" means a practice, procedure, action or failure to act on the part of a public employer that:

    (1)   violates a federal law, a federal regulation, a state law, a state administrative rule or a law of any political subdivision of the state;

    (2)   constitutes malfeasance in public office; or

    (3)   constitutes gross mismanagement, a waste of funds, an abuse of authority or a substantial and specific danger to the public.

N.M. Stat. Ann. § 10–16C–2(E).

communicated to the former CFO that this alleged fraud must be reported. [Trejo] reported the instance to OSA on August 26, 2016, but was reported to have known of material missing deposits since in or around September 2015.

Def. UMF ¶ 20.

Trejo disputes the September 2015 date, and instead submits that he did not know of the missing deposits until October 2015. Pl. MUF ¶ A. This one-month difference does not create a disputed issue of material fact. Dr. Romero states in his affidavit that he based his decision in part on the Report's finding that Trejo was partially responsible for the "delays that allowed for the embezzlement scheme to continue," Doc. 78-5 ¶ 15, which would encompass an eleven month delay in reporting to the same extent as a twelve month delay. Plaintiff's counsel does not respond to the Motion's arguments on this claim. Therefore, the Court is left to inquire whether Defendants have properly made and supported their summary judgment request pursuant to Fed. R. Civ. P. 56.

The record shows that Trejo has not satisfied the causation prong. Courts in this District have stated that a NMWPA plaintiff must show that a protected disclosure was a "contributing factor" in the unfavorable personnel decision. *See Walton*, 113 F. Supp. 3d at 1202 (reviewing Tenth Circuit guidance on the causal connection requirement in the federal Whistleblower Protection Act) (citing *Lockheed Martin Corp. v. Admin. Review Bd., U.S. Dept. of Labor*, 717 F.3d at 1129 (10th Cir. 2013)). Here, while Trejo may have made a protected disclosure to authorities, there is no evidence that he was subject to an adverse employment action because of his protected disclosure or even that his protected disclosure was a contributing factor to Dr. Romero's decision. While the Court should draw all inferences in favor of Trejo, it finds that the record is devoid of any evidence to support Trejo's requested inference. *See Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir.2009) (stating that "we. . . adopt plaintiff's version of facts,

insofar as it is supported by the record"). Accordingly, the Court concludes that Defendants are entitled to summary judgment on Count 9.

   E.   Count 10: Violation of Right to Privacy

   Trejo's Right to Privacy claim is based on the allegation that Defendants provided an un-redacted copy of the Report to the local newspaper for general publication. Doc. 4 ¶ 138. The Motion submits that the Report is not subject to privacy rights because it is a public document published on the State Auditor's website. Doc. 78 at 16; *see also* Def. UMF ¶ 41.

   "Information is constitutionally protected when a legitimate expectation exists that it will remain confidential while in the state's possession." *Mangels v. Pena*, 789 F.2d 836, 839 (10th Cir. 1986) (citing *Nixon v. Administrator of General Services*, 433 U.S. 425, 457–58 (1977)). The legitimacy of an individual's expectations depends, at least in part, upon the intimate or otherwise personal nature of the material which the state possesses. *Id.* "It is irrelevant to a constitutional privacy analysis whether these allegations are true or false," merely "[t]he disclosed information itself must warrant constitutional protection." *Stidham v. Peace Officer Standards And Training*, 265 F.3d 1144, 1155 (10th Cir. 2001).

   To determine whether certain information is given protection, the Court must consider: "(1) if the party asserting the right has a legitimate expectation of privacy. . ., (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner." *Herren v. Lappegaard,* 2018 WL 3999658, at *7 (D. Colo. July 30, 2018), *report and recommendation adopted,* No. 18-CV-00209-CMA-KLM, 2018 WL 3996601 (D. Colo. Aug. 20, 2018) (quoting *Stidham*, 265 F.3d at 1155 (10th Cir. 2001)).

   The Court concludes that Trejo's claim fails as a matter of law. There is not a sufficient factual basis for any finding that he has a legitimate expectation of privacy in the Report. The

Motion establishes that the Report is a public document: the OSA released the full, unredacted, report on its website on November 30, 2017. Def. UMF ¶ 41. Trejo has admitted that he has no knowledge of Defendants releasing the Report to the media and he even acknowledge that the media could have retrieved the Report from the OSA website. Def. UMF ¶¶ 44, 45.

Moreover, the contents of the Report further support a finding that Trejo has no legitimate expectation of privacy. The Tenth Circuit has held that "[m]ere allegations that an official failed to abide by state law will not suffice to state a constitutional [privacy] claim. The disclosed information itself must warrant constitutional protection." *Stidham*, 265 F.3d at 1155 (quoting *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995)). For such information to warrant protection, it must be "highly personal or intimate." *Id.* The Tenth Circuit does not consider items analogous to what was issued in the Report, namely reasons for resignation and employee evaluations, to be "highly personal or intimate." *Id.* For example, the Tenth Circuit held that the *Stidham* plaintiff, a Utah peace officer, did not have a protected expectation of privacy in the defendant's disclosure that he had allegedly raped a young girl and resigned from one of his former position under threat of termination. *Id.* 1155–56. Like the information disclosed in *Stidham*, the Report castigates Trejo's on-the-job performance, but it does not give rise to a protected expectation of privacy.

Further, the Court also finds that DPS and the OSA's disclosure of the Report serves a compelling state interest because it concerns the misuse of public funds. It is well-established that Trejo's privacy concerns must give way when balanced against the interest in publishing matters of public importance. As the United States Supreme Court noted in *Bartnicki v. Vopper*, "[t]he right of privacy does not prohibit any publication of matter which is of public or general interest." 532 U.S. 514, 534 (2001).

21

Accordingly, the Court concludes that Defendants are entitled to summary judgment on Count 10.

**Conclusion**

For the reasons discussed in this Memorandum Opinion and Order, the Court hereby DISMISSES Plaintiff's NMHRA claims and GRANTS Defendants' Motion for Summary Judgement on all remaining claims. A Rule 58 Judgment shall issue separately.

**IT IS SO ORDERED.**

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE